IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |
|---|---|
| ANDRES DEJESUS, in his capacity as administrator of the ESTATE of RANDY RUIZ, <br><br> Plaintiff, <br><br> v. <br><br> WEXFORD HEALTH SOURCES, INC., *et al.*, <br><br> Defendants. | No. 20-cv-1682 <br> Judge Franklin U. Valderrama |

**ORDER**

Randy Ruiz (Ruiz), a former inmate at Stateville Correctional Center (Stateville) committed suicide four days after reporting to Stateville. Wexford Health Sources, Inc. (Wexford) contracted with IDOC to provide medical and mental health services for prisoners at Stateville. The Administrator of Ruiz's estate (Plaintiff) brings this action against six employees of the Illinois Department of Corrections (IDOC; six employees collectively, IDOC Defendants), Wexford Health Sources (Wexford), and three of Wexford's employees stationed at Stateville (Wexford Individual Defendants). R. 1, Compl.[1] The previously assigned judge[2] granted in part and denied in part Wexford's motion to dismiss. R. 63, 7/30/2020 Opinion. This Court denied two separate motions to dismiss filed by five of the six IDOC Defendants. R. 98. Now before the Court are three motions to dismiss filed by the Wexford Individual Defendants, Dr. Diana Kucera (Kucera), Ramanda Simonic (Simonic), and Katherine Knoll (Knoll). R. 57, Kucera Mot. Dismiss; R. 60, Kroll Mot. Dismiss; R. 76, Simonic Mot. Dismiss (collectively, Indv. Wexford Mots. Dismiss). The Wexford Individual Defendants all moved to dismiss Plaintiff's state law claims for wrongful death/survival (Count IV) and intentional infliction of emotional distress (Count V). Kroll and Simonic moved to dismiss Plaintiff's state law claim for healing art malpractice (Count VII). For the reasons that follow, the Wexford Individual Defendants' Motions to Dismiss are granted in part and denied in part.

---

[1]Citations to the docket are indicated by "R." followed by the docket number and, where necessary, a page or paragraph citation.

[2]This case was originally pending before Judge Virginia M. Kendall. The case was reassigned to this Court on September 28, 2020. R. 96.

**Analysis**

*Wrongful Death/Survival (Count IV)*

In Count IV, captioned "State Law Claim Against Wexford Defendants for Wrongful Death/Survival," Plaintiff alleges that the wrongful death of Ruiz was "proximately caused by the neglect, default, and/or willful wanton conduct of the Defendants" in violation of the Illinois Wrongful Death Act, 740 ILCS 180/01 *et seq*. Compl. ¶ 68. Plaintiff also claims that the Wexford Individual Defendants' "wrongful conduct was the direct and proximate cause of injury and damage to" Ruiz under the Illinois Survival Act, 755 ILCS § 5/27-6. *Id.* ¶ 69. The Wexford Individual Defendants move to dismiss this Count under Rule 12(b)(6), arguing that the Wrongful Death Act and the Survival Act are two different statutes, meant for two different classes of plaintiffs, and afford two different sets of available remedies. Moreover, the Wexford Individual Defendants claim that they are unable to discern what cause of action Plaintiff purports to state in Count IV. R. 58, Kucera Memo. Dismiss at 5–6; R. 61, Kroll Memo. Dismiss at 5–6; Simonic Mot. Dismiss at 7–8.

The Court agrees with the Wexford Individual Defendants that the two statutes—the Illinois Wrongful Death Act and Illinois Survival Act—operate differently and provide vehicles for two different classes of plaintiffs to bring an underlying cause of action. The Wrongful Death Act "allows the decedent's next of kin to recover damages for *their own* loss based on the wrongful actions of another." *Lawler v. Univ. of Chicago Med. Ctr.*, 104 N.E.3d 1090, 1094 (Ill. App. Ct. 2017) (emphasis added) (internal citation omitted); *see also Kmak v. Sorin Grp. Deutschland GmbH*, 2017 WL 8199974, at \*4 (N.D. Ill. Dec. 12, 2017). "[I]n a wrongful death action[,] the cause of action is the wrongful act, neglect or default causing death, and not merely the death itself." *Lawler*, 104 N.E.3d at 1094 (internal citations and quotations omitted). Conversely, the Illinois Survival Act provides for a *derivative* action, allowing "a representative of the decedent to maintain those statutory or common law actions which had already accrued to the decedent before he died." *Kmak*, 2017 WL 8199974, at \*3. The Court notes, however, that one plaintiff can bring the same underlying claim as two separate causes of action via both the Wrongful Death Act and the Survival Act. *Id.* at \*4.

Under Rule 8(a)'s notice pleading standard, a plaintiff need not "plead either facts or legal theories. *Hefferman v. Bass*, 467 F.3d 596, 599 (7th Cir. 2006) (collecting cases). Put another way, "under Rule 8, the rules are simple: Notice is what counts. Not facts; not elements of 'causes of action'; not legal theories." *Id.* at 600. Here, the Court finds that two separate causes of action are contained within Count IV: two medical negligence claims, one brought under the Wrongful Death Act and one brought under the Survival Act. And despite the Wexford Individual Defendants' contentions that Count IV's statutory basis is unclear, each Wexford Individual Defendant clearly recognizes that Plaintiff is alleging claims for medical negligence.

*See* Kucera Memo. Dismiss at 6 ("Count IV purports to be both a wrongful death and survival claim based upon medical negligence under Illinois law."); Kroll Memo. Dismiss at 6 (same); Simonic Mot. Dismiss at 8–9 ("If Plaintiff is going to claim that Dr. Simonic violated the Illinois Wrongful Death Act or Survival Act by committing, for example, medical negligence, then he must plead the elements of his medical negligence claim."). Further, the Wexford Individual Defendants all engage in legal analyses concerning the elements of a medical negligence claim under both the Wrongful Death Act and the Survival Act. Given that Count IV is clearly captioned to include both statutes, and considering that the Wexford Individual Defendants themselves analyzed the medical negligence claim under both statutes, the Court finds that the Complaint at the very least puts the Wexford Individual Defendants on notice that Plaintiff brings claims for medical negligence under both the Survival Act and the Wrongful Death Act. The Court accordingly construes Count IV to contain two separate causes of action.

Putting aside the propriety of the statutory bases, the Wexford Individual Defendants also argue that Plaintiff fails to plead each element of a Wrongful Death Act Claim and a medical negligence claim under the Survival Act. Specifically, they contend that Plaintiff does not allege that any of the Wexford Individual Defendants owed a legal duty to Ruiz. Kucera Memo. Dismiss at 5–6; Kroll Memo. Dismiss at 5–6; Simonic Mot. Dismiss at 7–8. In order to maintain a claim under the Wrongful Death Act, the plaintiff must allege: (1) defendants owed a duty to the decedent; (2) defendants breached that duty; (3) defendants' breach of the duty proximately caused the decedent's death; and (4) that the pecuniary damage occurred to persons designated under the Wrongful Death Act. *Rodgers v. Cook Cty.*, 998 N.E.2d 164, 172 (Ill. App. Ct. 2013). A medical negligence claim under the Survival Act requires that a plaintiff plead similar elements: "(1) the proper standard of care by which to measure the defendants' conduct; (2) a negligent breach of the standard of care; and (3) the resulting injury proximately caused by the defendants' lack of skill or care." *Bergman v. Kelsey*, 873 N.E.2d 486, 496 (Ill. App. Ct. 2007) (internal citations omitted).

Here, Defendants are right that Plaintiff does not specify the elements of both claims in the complaint. Yet "complaints do not need to match facts to 'elements' of a legal theory." *Hefferman*, 467 F.3d at 599 (citing *Bartholet v. Reishauer A.G. (Zürich),* 953 F.2d 1073, 1078 (7th Cir. 1992)). Moreover, the Court can consider not only allegations contained in the Complaint itself, but also documents that are attached to it, including the Report of Dr. Judith S. Willison, R. 1-3, Willison Aff. *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013) ("[W]e have taken a broader view of documents that may be considered on a motion to dismiss, noting that a court may consider, in addition to the allegations set forth in the complaint itself, documents that are attached to the complaint, documents that are central to the complaint and are referred to in it … ."). From a notice point of view, considering the facts alleged in the Complaint and the documents attached to it, Plaintiff has

adequately pled that Kroll and Simonic owed duties to Ruiz and breached those duties, but Plaintiff fails to adequately plead that Kucera owed a duty to Ruiz.[3]

Plaintiff sufficiently alleges that Kroll and Simonic owed Ruiz a duty of reasonable care in accordance with standards of care in the community of mental health professionals. Compl. ¶ 79; *see also* Willison Aff. ¶ 13 ("Kroll had a duty as a mental health professional to adequately evaluate and document Randy Ruiz's mental health status, needs, the level of his mental and emotional distress, his risk for suicide and his future threat of self-harm each time she was assigned to evaluate Mr. Ruiz on crisis watch."); *id.* ¶ 15 ("Simonic had a duty to adequately supervise those making daily evaluations of individuals who were on crisis watch, including Randy Ruiz, and to ensure that Randy Ruiz was adequately evaluated and his mental health status, needs, the level of his mental and emotional distress and his risk for suicide and future threat of self-harm were accurately assessed and documented."). Plaintiff also sufficiently alleges that Kroll and Simonic breached those duties, by among other things, failing to ensure that Ruiz was housed in a safe and suicide resistant cell, which led to Ruiz's death by suicide. Compl. ¶¶ 37–44, 81–83; Willison Aff. ¶¶ 13, 15.

But, just as Plaintiff failed to allege that Wexford owed a duty to Ruiz, *see* 7/30/2020 Opinion at 7, Plaintiff also fails to allege that Kucera owed a duty to Ruiz. Plaintiff tacitly concedes this point, as he fails to point out what allegations in the Complaint reveal Kucera's duty. R. 73, Pl.'s Resp. Kucera Mot. Dismiss at 7 (arguing generally that the "factual claims in Paragraphs 1–44 [of the Complaint] establish that both defendants Kucera and Kroll had a duty of care to Mr. Ruiz and that they violated that deliberate indifference standard of care"). As such, Plaintiff's Wrongful Death and Survival Act claims for medical malpractice against Kucera are dismissed without prejudice. Count IV, which this Court construes to contain two separate claims for medical malpractice brought under the Wrongful Death Act and Survival Act, may still proceed against Kroll and Simonic.

*Healing Art Malpractice (Count VII)*

The Court agrees with Defendants Kroll and Simonic that Plaintiff's healing art malpractice claim must be dismissed because it is duplicative of his Wrongful Death Act and Survival Act claims for medical malpractice, and cannot be brought by the administrator of Ruiz's estate as separate actions outside of a survival or wrongful

---

[3]Plaintiff also fails to attach an affidavit stating that he consulted with a mental health professional who finds that "there is a reasonable and meritorious case for filing" the action against Kucera. 735 ILCS 5/2-622(a). Such an omission at the pleading stage, however, is not a basis for dismissal. *Young v. United States*, 942 F.3d 349, 351 (7th Cir. 2019) ("[A] complaint in federal court cannot properly be dismissed because it lacks an affidavit and report under § 5/2-622.").

death action. Kroll Memo. Dismiss at 7–8; Simonic Mot. Dismiss at 4–7 (citing *Kmak*, 2017 WL 8199974, at \*3). Plaintiff cites only one case in support of his argument that he, as the administrator of the decedent's estate, has standing to bring a healing art malpractice claim. R. 88, Pl.'s Resp. Simonic Mot. Dismiss at 7 (citing *Pitzer v. City of E. Peoria*, 597 F. Supp. 2d 806, 810 (C.D. Ill. February 11, 2009)). But *Pitzer* allowed the decedent's estate to recover damages for conscious pain and suffering endured and medical expenses incurred by the decedent before his death *pursuant to the Illinois Survival Act*, and to recover pecuniary damages incurred by the next of kin as a result of the decedent's death *under the Wrongful Death Act. Pitzer*, 597 F. Supp. 3d at 810. Plaintiff cites no authority supporting the proposition that he may bring a standalone action for healing art malpractice. What's more, because the Court construes Count IV to constitute separate claims for medical malpractice under the Wrongful Death Act and the Survival Act, Count VII is duplicative of Count IV, as "the former [is] the underlying legal theor[y] for the latter." *Kmak*, 2017 WL 8199974, at \*4. As such, Plaintiff has no independent claim for healing art malpractice, nor can he plead this count in the alternative. Count VII is thus dismissed with prejudice, because Plaintiff cannot bring this as a standalone claim. *See id.*

### *Intentional Infliction of Emotional Distress (Count V)*

In Count V, Plaintiff asserts a claim of intentional infliction of emotional distress against the Wexford Individual Defendants. Plaintiff alleges that Defendants engaged in extreme and outrageous conduct by refusing and failing to adequately care for and protect Ruiz; failing to respond to Ruiz's serious mental health needs; and acting deliberately indifferent to his suffering. Compl. ¶¶ 72–74. The Wexford Individual Defendants argue[4] that Count V should be dismissed as Plaintiff fails to plead sufficient facts that the Defendant caused severe emotional distress to Ruiz or that the Defendants' conduct was "outrageous." Kucera Memo. Dismiss at 3–4; Kroll Memo. Dismiss at 3–4; Simonic Mot. Dismiss at 3–4. The Court agrees.

Under Illinois law, to state a claim for intentional infliction of emotional distress, a plaintiff must allege that: (1) the defendant's conduct was extreme and outrageous; (2) the defendant knew that there was a high probability that her conduct would cause severe emotional distress; and (3) the conduct in fact caused severe emotional distress. *Sweamigen-El v. Cook Cty. Sheriff's Dep't*, 602 F. 3d 852, 864 (7th Cir. 2010) (citing *Kolegas v. Heftel Broad. Corp.*, 607 N.E.2d 201 (Ill. 1992)). "To meet the "extreme and outrageous" standard, the defendants' conduct must be so extreme as to go beyond all possible bounds of decency and to be regarded as intolerable in a civilized community." *Sweamigen-El*, 602 F. 3d at 864. In determining whether the defendant's conduct reaches the "extreme and outrageous" level, "courts consider: 1)

---

[4]Simonic also argues that Count V should be dismissed because Plaintiff lacks standing to sue her for negligence. A motion to dismiss for lack of standing is a Rule 12(b)(1) motion. As the Court finds that Plaintiff failed to plead an intentional infliction of emotional distress claim in Count V, the Court need not address Defendant's alternative argument for dismissal.

the . . . power or control the defendant has over the plaintiff; 2) whether the defendant reasonably believed its objective was legitimate; and 3) whether the defendant was aware the plaintiff was "peculiarly susceptible to emotional distress, by reason of some physical or mental particularity." *Franciski v. Univ. of Chi. Hosp.*, 338 F.3d 765, 769 (7th Cir. 2003) (quoting *McGrath v. Fahey*, 533 N.E. 2d 806 (Ill. 1998)).

The Court finds that Plaintiff has failed to set forth sufficient allegations to state a claim for intentional infliction of emotional distress. *See Scott-Pitts v. Cty. of Cook*, 2018 WL 3626991, at \*6 (N.D. Ill. July 30, 2018). At the outset, as noted by the Wexford Individual Defendants, Plaintiff fails to show that their conduct was extreme and outrageous. In the Complaint, Plaintiff alleges only that Kucera was the Mental Health Director in charge of mental health care and services for prisoners like Ruiz, and that she was the Team Leader of Ruiz's Crisis Team and was deliberately indifferent to the dangers the crisis cell posed. Compl. ¶¶ 9, 32. Plaintiff alleges that on March 17, 2018, Kroll recommended that Ruiz be moved to a less frequent watch, and be allowed to have a safety blanket, safety smock, and mattress in his cell (March 17 Recommendation), despite his continued expression of a desire to die. Compl. ¶ 20. On March 20, Kroll again assessed Ruiz, noting that he would always feel suicidal, but nonetheless recommended that he would benefit from a less restrictive status (March 20 Recommendation), which allowed him to be checked on less frequently and granted him a safety blanket, mattress, and non-suicide-proof jumpsuit. *Id.* ¶ 23. Defendant Simonic did not question Defendant Kroll's March 17 Recommendation and March 20 Recommendation. *Id.* ¶¶ 20, 23; Willison Aff. ¶ 15. These allegations do not show that the Wexford Individual Defendants exercised "the pinnacle of power and control over Ruiz" any more than usual in a prison setting, nor do they show that the Wexford Individual Defendants' engaged in extreme and outrageous conduct toward Ruiz.

In any event, Plaintiff fails to allege the second and third elements, that any of the Wexford Individual Defendants intended or knew that their conduct would cause Ruiz severe emotional distress and that their conduct actually caused Ruiz severe emotional distress. The Court, however, cannot say that there is no set of facts pursuant to which Plaintiff could state a cause of action for intentional infliction of emotional distress. Therefore, dismissal is without prejudice.

*Civil Conspiracy*

Lastly, the Wexford Individual Defendants move to dismiss any civil conspiracy claim on the basis that while Plaintiff's Complaint contains a few allegations of civil conspiracy (Compl. ¶¶ 40–42), they are not tied to any count and Plaintiff fails to plead the elements of a civil conspiracy claim. Kucera Memo. Dismiss 4–5; Kroll Memo. Dismiss 4–5; Simonic Mot. Dismiss 9–10. Plaintiff disagrees and insists that he has sufficiently alleged a civil conspiracy.

6

The Court already has held that Plaintiff did not plead a conspiracy claim, finding that there was nothing for the Court to dismiss in response to Wexford's motion to dismiss a civil conspiracy claim. 7/30/2020 Opinion at 1 n.1. Plaintiff raises no new legal or factual issues between the issuance of the Court's Opinion on July 30, 2020 and the present, and as such, the Court's holding stands. If Plaintiff wishes to file a conspiracy claim, he may do so as a separate count in an Amended Complaint.

## Conclusion

For the foregoing reasons, the Wexford Individual Defendants' Motions to Dismiss [57], [60], [76] are granted in part and denied in part. Count IV (Wrongful Death/Survival) may proceed against Kroll and Simonic, and the Court construes Count IV to contain two separate causes of action for medical malpractice brought under both the Wrongful Death Act and the Survival Act. Count IV is dismissed against Kucera without prejudice. Count V (intentional infliction of emotional distress) is dismissed against all Wexford Individual Defendants without prejudice. Count VII (healing art malpractice) is dismissed against Kroll and Simonic with prejudice. Plaintiff has until February 10, 2021 to file as amended complaint consistent with this Order. A status hearing is set for February 12, 2021 at 9:30 a.m. but to track the case only (no appearance is required; the case will not be called).

Franklin U. Valderrama
United States District Judge

DATED: January 20, 2021

7