# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| **ESTATE OF RANDY RUIZ,** | ) | |
| **Deceased, by,** *IRIS RUIZ,* | ) | |
| **Administrator,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No. 20 CV 01682** |
| **vs.** | ) | |
| | ) | **Judge** *Jeremy C. Daniel* |
| **WEXFORD HEALTH SOURCES, INC.,** | ) | |
| **Mental Health Director Dr. Diana Kucera,** | ) | **Magistrate Young B. Kim** |
| **Mental Health Professional Ramanda Simonic,** | ) | |
| **Licensed Social Worker Katherine Kroll,** | ) | |
| **WARDEN Walter Nicholson, Assistant Warden** | ) | |
| **Nicholas Lamb, Correctional Shift Commander** | ) | |
| **Supervisor Malkowski, Correctional Lieutenants** | ) | |
| **Christopher McCluster and Jeffrey Clark,** | ) | |
| **CORRECTIONS OFFICER Jordan Moore,** | ) | |
| | ) | |
| | ) | **Jury Demand** |
| **Defendants.** | ) | |

# *THIRD AMENDED[1]* COMPLAINT

On March 20, 2018, 22 year old Randy Ruiz fashioned a noose and hung himself in a so-called crisis cell at the Northern Reception and Classification Center (NRC), Stateville Correctional Center, after four days in the custody of the Illinois Department of Corrections (IDOC). This is a civil rights action with pendent state law claims seeking monetary damages on behalf of the Estate of Randy Ruiz and his heirs. Defendants and their policies were deliberately indifferent to the safety, welfare, care and treatment of Randy, violated state law and are therefore liable for his death.

---

[1]Substantive amended changes to the Complaint are identified through **bold italics**. Specifically, changes were made to ¶2.

1

## JURISDICTION AND VENUE

1. The jurisdiction of the Court is invoked pursuant to the Civil Rights Act, 42 U.S.C. §1983; Judicial Code, 28 U.S.C. §§1331 and 1343(a); and supplementary jurisdiction, as codified in 28 U.S.C. §1367(a).

## PARTIES

2. Plaintiff Estate of Randy Ruiz, brings this action by *Iris Ruiz*, Randy's mother, a resident of the State of Illinois and the administrator for the estate duly appointed in the Circuit Court of Cook County, Chicago, Illinois. (*In the matter of the Estate of Randy Ruiz,* 2019 P 008695).

3. Defendant Warden Walter Nicholson was at all relevant times an IDOC Chief Administrative Officer at NRC Stateville and his responsibilities included supervision of subordinates, setting policies and procedures to protect the health and safety of prisoners confined in the prison, including Randy Ruiz.

4. Defendant Assistant Warden Nicholas Lamb was at all relevant times an IDOC Chief Administrative Officer at Stateville and his responsibilities include supervision of subordinates, setting policies and procedures to protect the health and safety of prisoners confined in the prison, including Randy Ruiz.

5. Defendant Correctional Shift Commander Supervisor Malkowski was at all relevant times a supervisory employee of the IDOC and his responsibilities included carrying out IDOC policies and procedures to protect the health and safety of prisoners and supervising other IDOC employees; he was also a member of the Crisis Care Team personally responsible for the housing and welfare of Randy Ruiz.

6. Defendants Christopher McCluster and Jeffrey Clark were at all relevant times correctional lieutenants and supervisory employees of the IDOC and their responsibilities

2

included carrying out IDOC policies and procedures to protect the health and safety of prisoners and supervising other IDOC employees, including the observation and welfare of Randy Ruiz.

7. Defendant Jordan Moore was at all relevant times a correctional officer employed by the IDOC, and his responsibilities included carrying out IDOC policies and procedures to protect the health and safety of prisoners, including the observation and welfare of Randy Ruiz.

8. Defendant Wexford Health Sources, Inc. (hereinafter "Wexford"), a Pennsylvania corporation doing business in Illinois, contracted with the IDOC to provide medical and mental health care to those detained, including all prisoners at NRC Stateville. Wexford was responsible for the establishment and implementation of all written policies and directives, including those promulgated by the IDOC, in order to ensure adequate medical and mental health treatment was provided at all times and to all prisoners, including Randy Ruiz.

9. Defendant Dr. Diana Kucera was the Mental Health Director employed by Wexford to provide mental health care and services for prisoners at NRC Stateville, including Randy Ruiz and was the Team Leader of Ruiz' Crisis Team at all times relevant to this lawsuit.

10. Defendant Ramanda Simonic was a Mental Health Professional employed by Wexford to provide mental health care and services for prisoners at NRC Stateville, including Randy Ruiz; she was Defendant Kroll's supervisor at all times relevant to this lawsuit.

11. Defendant Katherine Kroll was a Licensed Social Worker employed by Wexford to provide mental health care and services for prisoners at NRC Stateville, including Randy Ruiz, and she assessed him, including on the day he died.

12. All individual defendants were at all relevant times employees of the IDOC or Wexford and were acting in the course and scope of their employment and under color of law. All are sued in their individual capacities.

3

# FACTS

13. IDOC and Defendant Wexford were on notice at the time of Mr. Ruiz' death, and have been on notice since at least 2007, that prisoners held at their facilities, including NRC Stateville, were subjected to deliberate indifference to their mental health medical needs. *Ashoor Rasho, et al., v. Roger E. Walker, et al.,* No. 07-1298 (hereinafter *Rasho*).

14. IDOC Administrative Directive 04.04.102, effective May 1, 2016, and in effect at all times relevant to this lawsuit, provided for suicide prevention services applicable to all facilities within the IDOC, including NRC Stateville, and specifically required *inter alia:*

a) Supervision levels for those at risk for suicide, including that possession of property, monitoring, placement in crisis cells is to be determined by a Mental Health Professional (MHP);

b) Chief Administrative Officer of each facility is to establish a Crisis Intervention Team which shall consist of a Team Leader, MHPs and nursing staff, and at least one member of the facility's security staff of the rank of Lieutenant or above;

c) Chief Administrative Officer of each facility shall designate Crisis Care Areas to be used to house offenders for the purpose of mental health treatment or observation; the cells designated within these areas shall have mesh coverings over all vents and windows and be made appropriately suicide resistant.

15. A settlement agreement, entered January 21, 2016, reinforced that all facilities shall designate a crisis care area and ensure that there are mesh coverings over all vents and windows. *Ashoor Rasho, et al., v. Roger E. Walker, et al.,* No. 07-1298, Dkt. 346-1, ¶X(f), p. 13.

16. In the *Rasho* May, 2017, monitoring report, the court-appointed monitor found that the IDOC was overall not compliant in the required areas of Initial (Intake) Mental Health Services: Screening; Mental Health Evaluation and Referrals; Treatment Plan and Continuing Review; and Suicide Prevention and, that "(t)he level of services provided to offenders in crisis

care is woefully inadequate to meet their treatment needs." *Rasho* Report, pp. 12, 14, 43.

17. On March 16, 2018, 22 year old Randy Ruiz arrived at NRC Stateville for entry into the IDOC after being sentenced to serve a long prison sentence.

18. Randy reported to mental health and medical screeners on March 16 not only that he felt overwhelmed at the prospect of serving a long prison sentence he received days earlier, but also that he had a history of psychiatric treatment, suicide attempts (including most recently by hanging), diagnoses of depression, schizophrenia, and bipolar disorder, that he was currently prescribed psychotropic medications, and that he had acute suicidal thoughts and intention, tearfulness, feelings of *inter alia,* hopelessness, helplessness, depression, guilt, shame, worthlessness, anxiety, sleeplessness and poor appetite.

19. On March 16, Randy was placed on suicide watch in crisis care with monitoring every ten minutes. He continued to report suicide ideation with a plan but allegedly said he recognized that carrying his plan out was not feasible due to the frequency of monitoring and observation.

20. On March 17, Defendant Kroll attempted to assess Randy, and reported that he continued to express his desire to die. She nevertheless recommended, and Defendant Simonic approved, his move to a 15-minute close supervision watch, and they allowed him to have a safety blanket, safety smock and mattress in his cell.

21. On March 18, a Mental Health Professional (MHP) attempted to assess Randy, but reported that he refused to speak.

22. On March 19, an MHP assessed Randy and reported that he expressed his continued desire to die "so that he can become famous;" he was continued on 15-minute close supervision.

23. On March 20, Defendant Kroll attempted  assessed Randy and recorded that he would not contract for safety, that he said he needed more "meds," and that he "always feels

5

suicidal," noting that Randy described his feces-smeared cell walls as "paintings on the wall are from my soul." In her reports about this assessment, which she knew sould be reviewed by Defendant Simonic, since only Simonic was licensed to make the decision about his watch status, Defendant Kroll failed to report comprehensive information on Randy's condition and falsely claimed that Randy would benefit from a less restrictive status, resulting in a decision to move him on a thirty minute periodic check status, to allow him to have a safety blanket, mattress and non-suicide proof jumpsuit.

24.  Although Defendant Moore was on duty, charged with the responsibility of monitoring Randy at least every thirty minutes, there are no records of observations of Randy from 6:50 a.m. until approximately 3:00 p.m. on March 20, during which time Randy smeared his own fecal matter on the window in the door to his cell.

25. Defendants McCluster and Clark, responsible for supervising Defendant Moore, who they knew had been a correctional officer for merely a week, failed to adequately supervise this new employee.

26.  At 9:00 p.m. on March 20, at Randy's request, a nurse cleaned and dressed wounds in the middle of his forehead and on his left wrist.

27.  At approximately 10:21 p.m. on March 20, Defendant Jordan discovered Randy hanging by his jumpsuit wrapped around his neck and tied to a vent in the ceiling of his cell, where handwritten in human feces were the words "UP I GO," "07/23/95 (Randy's birthdate) TO NOW," "Young King – Always," "Die young Tut Kurt Cobain," "Basquiat," and "Me?"

28.  By the time Randy Ruiz was cut down, he had no pulse; he was transported to Saint Joseph's Medical Center where he was pronounced dead less than an hour later.

29.  The crisis cell in which Randy died had a tie off point in a vent above the sink; there was no mesh covering these tie off points as required to prevent the ability to tie a ligature

around any tie off point in a crisis cell.

30. Each of the Defendants knew, should have known, and/or turned a blind eye to the fact that the cell in which Randy was placed was dangerous, not properly suicide-resistant, and not appropriate for use as a crisis cell.

31. Defendants Nicholson and/or Lamb failed to ensure that the cells used as crisis cells at the NRC Stateville were adequate for suicide prevention, appropriate for placement of suicidal prisoners, and safe from obvious suicide mechanism.

32. Defendants Malkowski and Kucera, part of the crisis team assigned to Randy Ruiz's care, failed to protect him and keep him safe from harm.

33. Defendant Kroll, the mental health professional on duty the day Randy died, failed to properly assess, follow up, communicate, and monitor his condition, and failed to provide him necessary services, care and treatment or refer him to someone who could provide that care, and failed to protect Randy and keep him safe from harm.

34. Defendant Simonic, the supervising mental health professional on duty the day Randy died, ratified the failures of Defendant Kroll, failed to adequately supervise her and properly assess, follow up, communicate, and monitor his condition, and failed to provide him necessary services, care and treatment or refer him to someone who could provide that care, and failed to protect Randy and keep him safe.

35. Defendants McCluster and Clark, correctional supervising lieutenants on duty when Randy died, failed to properly observe, monitor, supervise, turned a blind eye and failed to protect Randy and keep him safe from harm.

36. Defendant Moore, the correctional officer on duty in charge of conducting the mental health watches on the wing, was responsible for required observation and monitoring of Randy and failed to properly observe, monitor, record and document observations, notify or procure

other personnel, including mental health, and failed to protect Randy and keep him safe from harm.

37. Defendants knew that Randy suffered serious mental health needs, and they failed to properly observe him, respond and procure adequate treatment and care.

38. Despite Defendants' knowledge that Randy suffered serious mental health issues, was required at all times to be placed in a safe crisis cell, they, and/or their policies, were deliberately indifferent to Randy.

39. Defendants caused, and/or were responsible for, the unlawful conduct described herein, and resulting injuries. Among other things, they personally participated in the unlawful conduct, acts or omissions; failed to ensure that the crisis cell within which Randy was placed was safe, appropriate and adequate; failed to supervise, train or discipline those who personally participated in unlawful conduct, acts or omissions; and/or acted jointly or conspiring with others who did so. Defendants also authorized, acquiesced in or set into motion, policies, practices, plans or actions that led to the unlawful conduct: failed and refused with deliberate indifference to initiate and maintain adequate crisis cells, training and supervision; and ratified the unlawful conduct that occurred by agents and officers under their direction and control, including by failing to take remedial or disciplinary action.

40. Defendants, acting jointly and with others not sued, together and under color of law, reached an understanding, engaged in a course of conduct, engaged in joint action, and otherwise conspired among and between themselves to deprive Randy of his constitutional rights, and did deprive him of said rights, including his rights to due process as protected by the Eighth Amendment to the United States Constitution, and pursuant to 42 U.S.C. §1983.

41. In furtherance of this conspiracy or conspiracies, Defendants, together with co-conspirators, committed one or more overt acts set forth above, including, but not limited to, the

8

manipulation and alteration of false and totally unreliable evidence regarding the circumstances leading to and culminating in the death of Randy, and covering up the circumstances after Randy's death.

42. Said conspiracy or conspiracies, joint actions and overt acts continue to this date, caused Randy's constitutional rights to be violated and the injuries resulting from his death.

43. Defendants were deliberately indifferent to protecting Randy from harm and failed to prevent said harm, further failed to provide urgently needed mental health care to protect Randy from harm.

44. As a direct and proximate result of Defendants' acts, omissions and policies or absence of policies, Randy Ruiz and his heirs suffered, *inter alia*, injury, pain, distress, loss of love, affection, society, companionship and consortium as well as other injuries as a result of his death and the continuing loss of his life.

## COUNT I
## [§1983 Deliberate Indifference 8th Amendment Claim]

45. Plaintiff realleges paragraphs 1 through 44.

46. Plaintiff alleges an action pursuant to the Eighth Amendment against Defendants Nicholson, Lamb, Malkowski, Kucera, Simonic, Kroll, McCluster, Clark, and Moore.

47. Randy Ruiz, in custody and incarcerated at the NRC Stateville, relied wholly and completely on the Defendants to properly observe him, provide him with medical attention, and keep him safe, well and secure while he was in their care, custody and control.

48. Defendants, acting under color of law, intentionally and with conscious, callous, deliberate and unreasonable indifference, deprived Randy of his constitutional rights.

49. Defendants' acts and/or omissions constitute deliberate indifference to Randy's serious mental health needs, a failure to protect him from harm, and violated his rights under the

Eighth Amendment to the United States Constitution and 42 U.S.C. §1983.

50.  Defendants' conduct, actions and/or omissions were the direct and proximate cause of the violations of Randy's Eighth Amendment rights, his mental suffering, anguish, and other injuries.

WHEREFORE, pursuant to the Eighth Amendment and 42 U.S.C. §1983, Plaintiff demands actual or compensatory damages against these Defendants, and because they acted maliciously, wantonly, or oppressively, punitive damages against Defendants in their individual capacities, plus the costs of this action, plus attorneys' fees and such other and additional relief as this Court deems equitable and just.

## COUNT II
## [§1983 *Monell* Policy Claim Against Wexford]

51.  Plaintiff realleges paragraphs 1 through 44.

52.  The actions of the Defendants Kucera, Simonic and Kroll as well as others done pursuant to one or more interrelated *de facto* as well as explicit policies, practices and/or customs of Defendant Wexford, its corrections department, managers, directors, Personnel Divisions, its agents and/or officials.

53.  Defendant Wexford's policies, practices, and customs, were deliberate, callous, conscious and unreasonably indifferent to Randy's constitutional rights; and Defendant Wexford authorized, tolerated, and institutionalized the practices and ratified the illegal conduct herein detailed, and at all times material to this Complaint the Defendant Wexford, its corrections department, managers, directors, Personnel Divisions, its agents and/or officials had interrelated *de facto* policies, practices, and customs which include, *inter alia*,

 a) failing to require all personnel to ensure that suicidal prisoners are placed in crisis cells that are safe and suicide-resistant, specifically including that the cell had mesh coverings

10

over all vents and tie off points;

b) failing to provide suicidal prisoners on crisis watch with jumpsuits that are resistant to

tearing, for use as a ligature;

c) failing to provide effective treatment plans for suicidal prisoners in addition to

psychotropic medications;

d) failing to provide effective treatment and counsel for suicidal prisoners;

e) failing to properly communicate with correctional officials regarding suicidal

prisoners, allowing and/or turning a blind eye to the failure and refusal of corrections officials to

properly personally observe detainees and to do so at appropriate intervals and/or consistently,

based on the serious mental health needs of the detainees;

f) failing to recognize, identify suicidal signs and symptoms and properly assess suicidal

prisoners;

g) failing to properly train, supervise, discipline, transfer, monitor, counsel and otherwise

control health care providers;

h) failing to appropriately and timely identify serious mental health and other medical

issues and needs of detainees like Randy;

i) failing and refusing to provide adequate care, treatment and/or supervision for

prisoners like Randy;

j) failing and refusing to correct, discipline, and follow up on deficiencies noted in care,

treatment and/or supervision of prisoners; and/or

k) possessing knowledge of deficiencies in the policies, practices, customs and

procedures concerning prisoners, and approving and/or deliberately turning a blind eye to these

deficiencies.

54.  Said interrelated policies, practices and customs, as set forth above, both individually

and together, were maintained and implemented with deliberate indifference and unreasonably;
and encouraged, *inter alia*, the failure to ensure the safety of suicidal prisoners, identify
problematic behavior and to provide needed care and treatment.

55. Further, the constitutional violations and damages to Randy that occurred as
described herein were directly and proximately caused by: the unofficial and/or official, tacit
and/or expressed, and otherwise unconstitutional policies of authorized policy makers, who
deliberately ignored repeatedly subjecting detainees to unreasonable risk of harm, deliberately
ignored and failed to rectify repeated violations of appropriate suicide prevention procedures,
and deliberately failed to supervise and control health care providers so as to prevent violations
of prisoners' rights.

56. Said interrelated policies, practices and customs, as set forth above, both individually
and together, were maintained and implemented with deliberate indifference and unreasonably;
and, encouraged the Defendants to commit the aforesaid acts and omissions against Randy and
therefore acted as direct and proximate causes of said constitutional violations, and resulting
injuries.

57. The foregoing policies, practices, customs and omissions, maintained by Defendant
Wexford violated Randy's rights to not be cruelly and unusually punished under the Eighth
Amendment.

WHEREFORE, Plaintiff demands judgment against Defendant Wexford for
compensatory damages, plus costs and attorneys' fees and whatever additional relief this Court
finds equitable and just.

## COUNT III
## [ADA Claim Against Wexford and IDOC]

58. Plaintiff realleges paragraphs 1 through 44.

12

59. Title II of the Americans with Disabilities Act (42 U.S.C. §12131-12134) applies to the Defendants Wexford and IDOC through its director in his official capacity.

60. Wexford and the IDOC and their operations comprise a program and service for Title II purposes.

61. Randy Ruiz was a qualified individual with mental health disabilities throughout his incarceration and up to and including the time of his death.

62. Defendants Wexford and IDOC discriminated against Randy Ruiz on account of his disability and failed and refused to reasonably accommodate his mental health disabilities and to modify their operations, services, accommodations and programs to reasonably accommodate his disabilities, in violation of Title II of the ADA.

63. Defendants' failures cost Randy his life, and the violations of the ADA are a proximate cause of his death and the resulting damage to his estate.

64. Plaintiff is entitled to recover, as the representative of Randy's estate, for those damages sustained as described in this Complaint as a result of Defendant's violations of the ADA that caused his death.

WHEREFORE, pursuant to the Americans with Disabilities Act, Plaintiff demands actual or compensatory damages against Defendants Wexford and IDOC, plus the costs of this action, plus attorneys' fees and such other and additional relief as this court deems equitable and just.

## COUNT IV
## [State Law Claim Against Wexford Defendants for Wrongful Death/Survival Act]

65. Plaintiff realleges paragraphs 1 through 44.

66. Randy Ruiz left behind loving family members and friends, and those who survived him and who constitute his heirs under Illinois law will be determined by a court of competent jurisdiction.

67. Randy was officially pronounced dead on March 20, 2018.

68. Defendants Wexford, Kucera, Simonic and Kroll had a legal duty to Randy to exercise reasonable care according to the conditions known to them or that, through reasonable care should have been known to them, in accordance with the standards of care in the community of mental health professionals.

69. Further Defendants Wexford and Kucera had professional duties to create and implement policies, train, supervise and discipline staff to ensure that those in their employ and under their supervision did not breach the standards of care in their professions.

70. Wexford Defendants were negligent, deviated from the standard of care, and breached their duties in one or more of the following respects:

a) Failing to ensure Randy received adequate mental health care;

b) Failing to enact appropriate policies to ensure that Randy received adequate mental health care:

c) Failing to adequately train, supervise and discipline staff in order to ensure that Randy received adequate mental health care;

d) Failing to ensure that Randy was housed in a safe environment and a suicide-resistant cell;

e) Failing to recognize his continued suicide risk;

f) Failing to promptly and thoroughly communicate his condition and/or properly inquire or find out about his condition;

g) Failing to adequately evaluate, document and/or supervise his condition;

h) Failing to adequately prevent escalation, stabilize and/or supervise his condition; and,

i) Failing to properly intervene to prevent his death.

71. The wrongful death of Randy was proximately caused by the neglect, default, and/or

14

willful and wanton conduct of the Defendants, as described above, in violation of 740 ILCS § 180/1.

72. Defendants' wrongful conduct was the direct and proximate cause of injury and damage to Randy, including his pain and suffering, as well as injury and damage to his estate and his heirs.

73. As next of kin, Randy's heirs have lost and will continue to lose pecuniary support, consortium, society, companionship as well as the love and affection of their loved one, and they have additional incurred other expenses as a proximate result of his wrongful death.

WHEREFORE, Plaintiff demands compensatory damages, jointly and severally, against Wexford Defendants, and such other and further relief as this Court deems equitable and just.

## COUNT *V*
## [State Law Claim Against Wexford for *Respondeat Superior*]

74. Plaintiff realleges paragraphs 1 through 44.

75. Defendants Diana Kucera, Ramanda Simonic and Katherine Kroll were, at all times relevant to this Count, employees and agents of Wexford. Each of the above named individual Defendants was acting within the scope of their respective employment, and her acts and omissions that constitute violations of state law are directly chargeable to her respective employer, Defendant Wexford, under state law pursuant to *respondeat superior*.

WHEREFORE, Plaintiff demands judgment for compensatory damages, jointly and severally from Defendant Wexford.

Dated: **October 27, 2023**

Respectfully submitted,

 /s/ Janine L. Hoft
JANINE L. HOFT
JAN SUSLER
**NORA P. SNYDER**

People's Law Office
1180 N. Milwaukee Avenue
Chicago, Illinois 60642
773.235.0070

Attorneys for the Plaintiff


**Plaintiff demands a jury trial on this Amended Complaint**